UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-CR-00238-MOC-DSC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| TREMAYNE LAMONT DRAKEFORD, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's *pro se* Motion to Suppress (#14), Motion to Dismiss (#71), and Motion for Franks Hearing (#72). Having considered Defendant's motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.  Motion to Suppress**

Defendant challenges the detective's approach of himself and his vehicle in the stereo warehouse parking lot, the detention and investigative search conducted by Detective Suhr, and the warrantless search and seizure of his person and vehicle. He argues detectives exceeded the bounds of protective pat-down for weapons under Terry v. Ohio and violated his right to privacy. See 392 U.S. 1, 21 (1968) (holding a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the seizure.]"). Defendant seeks to suppress all evidence resulting from such violations as "fruit of the poisonous tree."

1

Defendant filed his Motion to Suppress (#14) on September 27, 2018. A suppression hearing was held on December 19, 2019, at which time the Government presented testimony from Detective Hepner and body camera footage confirming his account of the situation. Detective Hepner was present at, but did not conduct, the search-in-question. During the suppression hearing, the Government informed the Court that it originally planned to call Detective Suhr, who conducted the search, as a witness. However, Detective Suhr was not able to attend the suppression hearing due to unforeseen medical issues. The Court recessed the suppression hearing in the hopes that Detective Suhr would be able to testify before this matter was tried.

A second suppression hearing was held on April 1, 2019, at which time the Government presented testimony from Detective Suhr and additional video footage from Detective Suhr's body camera. After having reviewed two videos of the search from two different viewpoints, the Court determined that the detectives' actions leading up to and during the warrantless search and seizure were appropriate under the circumstances. For the reasons stated below and in open court on April 1, 2019, the Court denies defendant's Motion to Suppress (#14).

### A. The Approach of the Vehicle

Defendant challenges the detective's approach of himself and his vehicle in the stereo warehouse parking lot. As an initial matter, an officer or agent may approach any persons in public places and attempt to engage them in purely voluntary conversation. "Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way." Terry v. Ohio, 392 U.S. 1, 34 (1968) (White, J., concurring). But an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. Id. at 30.

Based on the information provided by the confidential informant, observations of Defendant during several recent surveillance operations, and Detective Murphy's observation of the hand-to-hand transaction just before detectives approached Defendant, detectives reasonably believed that criminal activity was afoot. Detectives reasonably believed they would find narcotics, money, and/or drug related paraphernalia on Defendant's person or in Defendant's vehicle at the time of the investigatory stop. Detective Hepner and Detective Suhr were, therefore, justified in approaching Defendant, stopping his vehicle from leaving, and asking him to step outside the vehicle to talk with detectives.

### B. The Detention of Defendant and Pat Down

Defendant also challenges the detention and investigative search conducted by Detective Suhr. "Police may conduct a patdown search without a warrant if, under the totality of the circumstances, the officer has an articulable, reasonable suspicion that a person is involved in criminal activity and that he is armed." United States v. Raymond, 152 F.3d 309, 312 (4th Cir. 1998); see generally Terry, 392 U.S. 1 (finding officer did not exceed reasonable scope of search in patting down outer clothing of defendants without placing his hands in their pockets or under outer surface of garments, until he had felt weapons, and then merely reached for and removed guns). "[T]he standard justifying a frisk is not onerous." United States v. Swann, 149 F.3d 271, 274 (4th Cir. 1998). Evasive behavior is a pertinent factor in determining reasonable suspicion. Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("[W]e cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."); United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975); Florida v. Rodriguez, 469 U.S. 1, 6 (1984).

Here, Defendant had just been observed engaging in a hand-to-hand transaction. Defendant also exhibited nervous behavior during his interactions with detectives soon thereafter. In the body camera footage played in court, Detective Suhr can be heard asking Defendant whether he possessed any weapons or drugs. Defendant's body language in the tape appears to suggest he was not being entirely forthcoming to officers. Defendant can also be seen attempting to place his hands in his pockets at one point during the conversation. Detectives testified that this behavior, combined with Defendant's criminal history and known affiliation with the distribution of narcotics, made officers concerned that Defendant was carrying a weapon. See United States v. Perrin, 45 F.3d 869, 873 (4th Cir. 1995) ("[I]t is certainly reasonable for an officer to believe that a person engaged in the selling of [narcotics] may be carrying a weapon for protection.").

Body camera footage corroborated the detectives' testimony that the circumstances reasonably suggested Defendant may have been armed and that a pat-down search was needed to ensure officer safety. United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998) (finding a brief pat-down is permitted when officers "perceive an appropriate level of suspicion of criminal activity and apprehension of danger"); see also Terry, 392 U.S. at 27 ("The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."). When faced with an uncooperative and seemingly agitated individual suspected of narcotics distribution, a prudent officer would remove that individual from the car and frisk his outer clothing for other weapons. United States v. Sprinkle, 106 F.3d 613, 618 (4th Cir. 1997). As such, the Court finds that the detention and the investigative frisk for weapons were proper.

### C. The Discovery of the Narcotics in Defendant's Pocket

4

Defendant challenges the warrantless search of his person and seizure of the contraband found in his pocket. Fourth Circuit case law holds that, during a permissible frisk, if a police officer "feels an object whose contour or mass makes its identity immediately apparent" as contraband, it may be lawfully seized. United States v. Hernandez-Mendez, 626 F.3d 203, 213 (4th Cir. 2010) (citing Dickerson, 508 U.S. at 375–76 ("plain feel" doctrine)); see also Swann, 149 F.3d at 276 (finding seizure of several credit cards hidden in suspect's sock justified when reasonable officer could have believed item was a weapon, e.g., a box cutter). Cases where a pat-down results in the discovery of controlled substances are generally covered by the plain feel doctrine. See United States v. Borne, 239 F. App'x 185, 187 (6th Cir. 2007) (officer properly performed pat-down search for weapons of suspected drug trafficker after traffic stop and permissibly found methamphetamine rock under "plain feel" doctrine). Such cases, however, typically involve a frisk for weapons in conjunction with a reasonable, articulable suspicion that a controlled substances offense is afoot.

    Here, body camera footage shows that Detective Suhr properly patted Defendant's outer clothing without manipulating or lingering over any particular area. Detective Suhr's hand can be clearly seen on the left side of Defendant, over the pocket containing the illegal substance, as Defendant continually turned around and refused to follow instructions. Although Detective Suhr stopped briefly during the frisk to detain Defendant due to safety concerns, the video shows that Detective Suhr reached directly into Defendant's pocket immediately thereafter, which corroborated Suhr's claim that the incriminating character of the "ball like substance" had been immediately apparent when he patted Defendant's outer pocket. Detective Suhr's confiscation of the illegal substance was, therefore, proper under Dickerson, notwithstanding the fact that the frisk was initiated to search for weapons.

5

Having considered Defendant's motion and reviewed the evidence carefully, the Court finds that the detectives' decision to approach Defendant, prevent him from leaving, and engage in a protective pat-down search of Defendant's outer clothing was appropriate under the circumstances. Furthermore, the pat down for weapons was conducted properly under Terry, and the removal of the contraband from Defendant's pocket was justified by the plain feel doctrine announced in Minnesota v. Dickerson, 508 U.S. 366, 375–76 (1993) ("If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context."). Detectives neither exceeded the scope of the investigative frisk nor violated Defendant's privacy right with an illegal search or seizure.

For the reasons stated above and in open court on April 1, 2019, Defendant's Motion to Suppress is denied.

**II.    Motion to Dismiss**

Defendant, who appears to identify as a Moorish American National, contends that the Government has wrongfully filed various, pending criminal charges against him. See Mot. to Dismiss (#71). Defendant alleges that, as "an Islamic Moslem, Aborginal [sic], Indigenous Moorish American," he is not subject to the laws of the United States, and he seeks dismissal for lack of jurisdiction. Id.

Despite Defendant's belief that he has consular status as a Moorish American, the law is clear that Moorish Americans, like all citizens of the United States, are subject to the laws of the jurisdiction in which they reside. United States v. White, 480 F. App'x 193, 194 (4th Cir. 2012)

(rejecting Moorish American Defendant's argument that court lacked jurisdiction to prosecute him and finding federal court had subject matter jurisdiction in federal criminal prosecution based on Defendant's physical presence in the United States); see also Jones–El v. South Carolina, No. 5:13–CV–01851, 2014 WL 958302, at *8 (D.S.C. Mar. 11, 2014) (quoting Smith ex rel Bey v. Kelly, No. 12–CV–2319, 2012 WL 1898944, at *2 (E.D.N.Y. May 24, 2012)). The Fourth Circuit has observed that "[n]either the citizenship nor the heritage of a Defendant constitutes a key ingredient to a district court's jurisdiction in criminal prosecutions." White, 480 Fed. Appx. at 194; Maryland v. Gant, No. CR RDB-16-0567, 2016 WL 7229737, at *1 (D. Md. Dec. 12, 2016).

For the reasons stated above and in open court on April 2, 2019, Defendant's Motion to Dismiss is denied.[1]

### III. Motion for Franks Hearing

Defendant filed a Motion for Franks Hearing (#48) on December 21, 2018, which the Court denied on January 2, 2019. See Order (#49). The Court incorporates by reference the facts and legal standard stated in its Order (#49), in which the Court found that Defendant did not make a sufficient showing to warrant a hearing under Franks v. Delaware, 438 U.S. 154 (1978). To prevail on a request for a Franks hearing, a defendant must support his contentions with "[a]ffidavits or sworn or otherwise reliable statements of witnesses" or explain their absence. United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008) (quoting Franks, 438 U.S. at 171). Defendant did not, however, attach the warrant or affidavit he desired to challenge, inform the Court of the nature of the misrepresentations made to a judicial officer, or provide an affidavit supporting such

---

[1] Defendant filed this Motion to Dismiss (#71) in-person during his April 1, 2019, suppression hearing. After considering Defendant's motion and review the pleadings, the Court denied the motion in open court on April 2, 2019.

7

contentions. The Court, therefore, denied Defendant's request for a hearing to challenge the validity of the warrant because he had submitted nothing to substantiate his various allegations. See Order (#49).

Defendant filed another Motion for Franks Hearing on April 2, 2019, which included a copy of the search warrant for his residence and vehicles and the affidavit underlying the warrant. However, Defendant still failed to produce evidence supporting his contention that the officer lied in the arrest warrant affidavit. For example, he claims that he did not own the Hyundai Genesis in August 2017, when an informant allegedly told officers that Defendant was trafficking narcotics using that vehicle. But Defendant provides no documentation to support his claim that he did not purchase the car until later, in September 2017. Defendant also challenges the affiant's claim that Defendant resided at 4800 Dogwood Place. But Defendant does not explain how any of the officer's statements were false or misleading. Defendant simply restates the facts as given in the affidavit, and then argues that the affiant "had no proof of residency" to make the claim that Defendant resided at 4800 Dogwood Place. Def.'s Franks Mot. (#72). In other words, Defendant does not appear to challenge the truth of the affiant's statements, only the sufficiency of the evidence supporting such statements. He argues that, because the utilities for that residence were in the name of Defendant's girlfriend, Seena Johnson, and because the vehicles registered to Defendant were associated with another address, the affiant had no proof that he lived at 4800 Dogwood Place.

Notwithstanding Defendant's contentions about, what he believes to be, adequate proof of his residency, the Court cannot find that the affidavit contained any false or misleading statements that would render the warrant invalid. Officers performed a surveillance operation on the property and witnessed Defendant at the residence on multiple occasions. They also observed both of

Defendant's vehicles parked in the driveway at 4800 Dogwood Place several times, and they witnessed Ms. Johnson driving the grey Hyundai Sonata registered to Defendant at least once. While Defendant's name may not have been on any paperwork associated with the property, the affidavit explains that Defendant's physical and repeated presence at the property, combined with his close association with Ms. Johnson, was the reason that officers believed Defendant resided at 4800 Dogwood Place. Defendant offers no evidence to substantiate his claim that the officer lied in the arrest warrant affidavit. Nor does he offer proof that he did, in fact, live elsewhere. Defendant has again failed to make a sufficient preliminary showing under Franks to warrant a hearing.

Having considered Defendant's motions and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's *pro se* Motion to Suppress (#14), Motion to Dismiss (#71), and Motion for Franks Hearing (#72) are **DENIED**.

Signed: April 22, 2019

Max O. Cogburn Jr
United States District Judge

9